## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **Masis Staffing Solutions, LLC,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Case No. 1:22-cv-02754-MHC |
| ) | |
| **Triangle Group Companies, Limited** ) | |
| **Liability Company; Triangle S.C.,** ) | |
| **LLC, Caryn Blanc; and Allan Parker,** ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## <u>AMENDED COMPLAINT</u>

COMES NOW, Plaintiff, MASIS STAFFING SOLUTIONS, LLC ("MASIS"), by and through its undersigned counsel, who files this Amended Complaint for Damages ("Amended Complaint") against Defendants, TRIANGLE GROUP COMPANIES, LIMITED LIABILITY COMPANY ("TRIANGLE GROUP"), TRIANGLE S.C., LLC ("TRIANGLE S.C."), CARYN BLANC ("BLANC"), and ALLAN PARKER ("PARKER"), and respectfully shows the Court as follows:

1.

Plaintiff filed the original Complaint, Civil Action No. 2022CV363311, in Fulton County Superior Court on April 12, 2022 naming TRIANGLE GROUP, BLANC and PARKER as Defendants.

2.

By May 17, 2022, TRIANGLE GROUP, BLANC and PARKER had been served with a copy of the Complaint and initial discovery as permitted by the Georgia Rules of Civil Procedure.

3.

On June 15, 2022, the Parties entered into an Acknowledgment of Service and Stipulation where by all defenses as to service of process and sufficiency of service of process were waived.  Furthermore, Defendants time to answer or otherwise respond to the Complaint was stipulated to have commenced on June 15, 2022.

4.

On July 13, 2022, Defendants filed with this Court, a Consent Notice of Removal with the consent and non-opposition of Plaintiff.  [Dkt. # 1].

## **INTRODUCTION**

5.

This Action arises from Plaintiff's ongoing effort to enforce its right to receive payment and just compensation for services rendered pursuant to a Staffing Agreement (the "Staffing Agreement") entered into between Plaintiff and an apparently defunct corporate entity called TriCap International, LLC ("TriCap").

6.

Plaintiff provided services under the Staffing Agreement from its inception in May 2017 through at least the end of February 2020, and continued to interact with individuals purporting to represent TriCap long after that.

7.

TriCap was incorporated as a Delaware limited liability company on or about April 30, 2009, but voluntarily cancelled its registration under Delaware law effect May 15, 2019.

8.

TriCap did not register to conduct business in the State of Georgia until July 8, 2019 almost two years after it executed the Staffing Agreement with Plaintiff. Indeed, TriCap did not register to conduct business in Georgia until _after_ it voluntarily cancelled its corporate existence under Delaware law.  Nevertheless, TriCap continued to register as an authorized foreign limited liability company

with the State of Georgia in 2019 and 2020 even though it did not exist as a foreign limited liability company.

9.

Nevertheless, TriCap operated (or purported to operate) a business in the State of Georgia from at least May 2017 until at least April 2020.  Moreover, somebody continued to conduct business in Georgia after May 15, 2019 and some corporate entity and/or individuals continued to hold themselves out as TriCap between May 15, 2019 and the end of February 2020 accepting services from Plaintiff under the auspices of the Staffing Agreement, but not paying the bills.

10.

Plaintiff sued TRIANGLE GROUP, BLANC and PARKER, and seeks to add TRIANGLE S.C. as a Defendant pursuant to this Amended Complaint, because some person or some entity asked for temporary employees from Plaintiff. Those requested employees were provided.   Some person or some entity acting pursuant to the Staffing Agreement approved and/or confirmed the hours worked by the requested temporary employees.  Plaintiff then paid those employees and sent invoices to TriCap and/or The Triangle Group for payment.  Some person or some entity assumed the contractual liabilities of TriCap after that limited liability company voluntarily ceased to exist on May 15, 2019.

11.

Plaintiff alleges and contends that Defendants TRIANGLE GROUP and/or TRIANGLE S.C. are business alter egos between and among each other and with the now defunct TriCap.  Regardless of whatever corporate formalities Defendants have attempted to implement, the businesses were operated as a unitary entity in terms of employees, reliance on the Staffing Agreement and common ownership. Neither the law nor equity permits Defendants to evade payment for the services provided pursuant to the Staffing Agreement.

## PARTIES

12.

Plaintiff, MASIS, is a limited liability company organized and existing under the laws of the State of Massachusetts operating as a staffing agency providing businesses with temporary employees. Plaintiff's principal place of business is located at 416 Belmont Street, Suite 201 Worcester, MA, 01604.  At all times relevant to this Complaint, MASIS has been registered to conduct business in the state of Georgia.

13.

Defendant Triangle Group Companies, Limited Liability Company ("TRIANGLE GROUP"), a New Jersey limited liability company incorporated in

2011, was served with the Fulton County Superior Court Complaint by hand delivering a copy of the Complaint to its Manager, Frank November on or about May 12, 2022.  As of May 1, 2022, TRIANGLE GROUP is listed by the New Jersey Secretary of State as an active business in good standing even though it has not filed any annual report since April 17, 2017.  TRIANGLE GROUP may also be served to its registered agent for service: Allan Parker, 9 South Hackensack Avenue, Building 2, Kearny, NJ 07032.  Based on information and belief, TRIANGLE GROUP has never registered with the Georgia Secretary of State, multiple individuals residing and conducting business in the State of Georgia have held themselves out as employees of TRIANGLE GROUP from 2017 up to the present.  TRIANGLE GROUP lists its main business address as 9 South Hackensack Avenue, Building 2, Kearny, N.J. 07032.  TRIANGLE GROUP has waived service of process and sufficiency of service of process.

14.

Defendant Triangle S.C., LLC ("TRIANGLE S.C."), a South Carolina Limited Liability Company, was incorporated on December 16, 1998. TRIANGLE S.C. registered to conduct business in the State of Georgia on September 1, 2020.  TRIANGLE S.C. has listed its principal office address as P.O. Box 26150, Scottsdale, Arizona 85255 and/or 54 Sonny Purdue Drive, Garden City, Georgia 31408.   At all times, TRIANGLE S.C. has listed its principal

records address as 9 S. Hackensack Avenue, Kearny, New Jersey 07032.  In

submitting information to the Georgia Secretary of State, TRIANGLE S.C.'s

authorized persons have been Frank November and Morgan Noble.  TRIANGLE

S.C. also appears to be doing business under the name "Triangle S.C.

International."  TRIANGLE S.C. may be served through its registered agent for

service: Northwest Registered Agent Service, Inc., 300 Colonial Center Parkway

STE 100N, Roswell, Georgia 30076.

15.

Defendant, CARYN BLANC, is a resident of Arizona and may be served with

process at her home address of 27735 N. 103rd Pl, Scottsdale, AZ 85262.  BLANC

has waived service of process and sufficiency of service of process.

16.

Defendant, ALLAN PARKER, is a resident of Florida and may be served

with process at his home address of 2000 S. Ocean Blvd. Apartment 505N, Palm

Beach, FL 33480.  PARKER has waived service of process and sufficiency of

service of process.

17.

TriCap was incorporated as a Delaware limited liability company on or

about April 30, 2009, but voluntarily cancelled its registration under Delaware law

effect May 15, 2019.  Nevertheless, TriCap conducted business in the State of

Georgia from at least May 2017 through at least May 15, 2019.  TriCap is a

privately held company that is owned by Defendants BLANC and PARKER.

TriCap did not register to conduct business in the State of Georgia until July 8,

2019 almost two years after it executed the Staffing Agreement with Plaintiff and

after TriCap voluntarily cancelled its registration under Delaware law.  Despite no

longer existing under Delaware law, TriCap continued to register as an authorized

foreign limited liability company with the State of Georgia in 2019 and 2020.

TriCap's managers were listed as Defendant PARKER and Frank November; and

Defendant BLANC and Morgan Noble were also listed as authorized persons for

TriCap with the Georgia Secretary of State.

18.

On or about October 4, 2021, TriCap filed a Statement of Information with

the California Secretary of State.   Defendant PARKER was listed as manager or

member of the limited liability company.  The Statement of Information was

executed by George Corsi as Vice-President of Finance.   The California filing

provided three business addresses:

(a)    2988 E. Ana Street, Rancho Dominguez, CA 90221

(b)    2988 E. Ana Street, Rancho Dominguez, CA 90221

(c)    9 S. Hackensack Avenue, Kearny, N.J. 07032

It is not clear whether this 2021 filing with the California Secretary of State was submitted on behalf of the voluntarily cancelled Delaware limited liability company that was registered in the State of Georgia, or whether an effort was being made to create a new, California limited liability company as of October 4, 2021.

19.

The Alter Ego Entity consists of, *inter alia*, TRIANGLE GROUP, TriCap and/or TRIANGLE S.C.  Moreover, Defendants CARYN BLANC and ALLAN PARKER directly or indirectly control and dominate TRIANGLE GROUP, TRIANGLE S.C. and TriCap and cause them to operate and conduct business as a unitary business entity.

20.

Each Defendant has either perpetrated or aided and abetted in the perpetration of the tortious conduct alleged in this Amended Complaint.

**JURISDICTION AND VENUE**

21.

The Complaint was removed to this Court pursuant to 28 U.S.C. §§1441(a), 1446(a) & (b) and 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds the sum of $75,000.00.

22.

Personal jurisdiction as to TRIANGLE GROUP is proper pursuant to the Georgia long-arm statute, O.C.G.A. § 9-10-91, as TRIANGLE GROUP, as part of the Alter Ego Entity or on its own behalf, transacts business in this State and committed acts that caused injury within the State.   Further, TRIANGLE GROUP has maintained at least two offices in Georgia: one at 54 Sonny Perdue Drive, Garden City, GA 31408 and one at 155 Brampton Road, Garden City, GA 31408.

23.

Personal jurisdiction as to TRIANGLE S.C. is proper pursuant to the Georgia long-arm statute, O.C.G.A. § 9-10-91, as TRIANGLE S.C., as part of the Alter Ego Entity or on its own behalf, transacts business in this State and committed acts that caused injury within the State.   Further, TRIANGLE S.C. has maintained at least one office in Georgia at 54 Sonny Perdue Drive, Garden City, GA 31408 and apparently operates out of that location to this day.

24.

This Court has jurisdiction over PARKER and BLANC pursuant to O.C.G.A. § 9-10-91 because each have transacted business in this State either in their individual capacity or through business entities that they dominate or control and each has committed acts that caused injury within the State.

25.

Venue is proper in this Court as to all Defendants and pursuant to O.C.G.A. §
9-10-93 because the injuries occurred in Fulton County, Georgia.

## FACTS

26.

On May 2, 2017, MASIS and TriCap entered into a Staffing Agreement
("Staffing Agreement") wherein MASIS provided TriCap with temporary
employees.  After providing the temporary employees, TriCap would confirm or
approve the hours worked by each employee, MASIS would then pay the employee,
and invoice TriCap for the services provided pursuant to the terms of the Staffing
Agreement.

27.

The Staffing Agreement was executed on behalf of TriCap by Frank
Feliciano.  Mr. Feliciano's email signature identified him as the "Director, East
Coast Operations."   His business address was listed as "The Triangle Group, 2801
Route 130 South North Brunswick, NJ 08902."  At all times pertinent to this
Amended Complaint, Mr. Feliciano's email address was

FFeliciano@thetrianglegroup.com.   At all times pertinent to this Amended
Complaint, Mr. Feliciano represented to Plaintiff and to the world that both he and
"The Triangle Group" were authorized to conduct business on behalf of TriCap.

28.

Defendants admit and contend that "The Triangle Group" is a registered trademark registered by Defendant TRIANGLE GROUP.  According to the Trademark Electronic Search System (TESS) maintained by the United States Patent and Trademark Office, the registration number for this trademark is 5754724.  Defendant TRIANGLE GROUP filed for this trademark on March 22, 2018 and the registration date is May 21, 2019.

29.

Defendant PARKER submitted to this Court an affidavit under oath stating that registering "The Triangle Group" trademark was the "only activity" Defendant TRIANGLE GROUP has ever undertaken and that this trademark is the only "thing" Defendant TRIANGLE GROUP has ever held. {Dkt. #3-2 at ¶¶ 12-14]. This representation, however, is not true.

30.

According to the Trademark Electronic Search System (TESS) maintained by the United States Patent and Trademark Office, Defendant TRIANGLE GROUP also owns the trademark "TRICAP INTERNATIONAL."  The registration number for this trademark is 5906214.  Defendant TRIANGLE GROUP filed for this trademark on March 22, 2018 and the registration date is November 12, 2019.

31.

An internet search using the Google search engine for "TriCap International, LLC" directs the inquiry to a website for "The Triangle Group."   A printout of the website is attached hereto as Exhibit A.

32.

An internet search using the Google search engine for "Triangle S.C. LLC" or "Triangle S.C. International" directs the inquiry to the same website for "The Triangle Group" as searching for "TriCap International LLC."

33.

The website for "The Triangle Group" does not mention "TriCap International, LLC." "Triangle S.C., LLC" or "Triangle S.C. International."  Nor does the website inform the reader or indicate in any manner that different or separate businesses are advertising, marketing or branding their services using the same "The Triangle Group" name.  In fact, the website specifically states, "We are still a privately-held company …" with no mention of unaffiliated corporate entities marketing under "The Triangle Group" brand.

34.

"The Triangle Group" website does identify nine (9) business locations for "The Triangle Group" as follows:

a)   9 South Hackensack Blvd., Kearney, NJ 07302

b)   2801 U.S. Route 130 S. North Brunswick, NJ 08902

c)   2988 E. Ana Street, Rancho Dominguez, CA 90221

d)   3015 E. Ana Street, Rancho Dominguez, CA 90221

e)   19087 S. Reyes Ave., Rancho Dominguez, CA 90221

f)   54 Sonny Perdue Drive, Garden City, GA 31408

g)   144 Brampton Road, Garden City, GA 31408

h)   6725 NW 36th Street, BLDG #6, Ste 600, Miami, Florida
      33166

i)   1018 Mendell Davis Drive, Byram, MS 39272

35.

The 9 South Hackensack Bld., Kearny, N.J. 07302 address is listed as the

primary business and/or records address for Defendants TRIANGLE GROUP and

TRIANGLE S.C., as well as for the now defunct TriCap.

36.

The 2801 U.S. Route 130 S. North Brunswick, NJ 08902 address is listed as

the business address of record for Robert Feliciano, Director, East Coast

Operations who executed the Staffing Agreement on behalf of TriCap.

37.

The two Georgia addresses, 54 Sonny Perdue Drive, Garden City, GA 31408 and 144 Brampton Road, Garden City, GA 31408 were addresses from which TriCap conducted business from May 2017 through the end of the contractual relationship.  Moreover, TRIANGLE S.C. and/or "Triangle S.C. International" continue to conduct business from the 54 Sonny Perdue Drive, Garden City, GA 31408 address to this day.

38.

The two addresses in Rancho Dominguez, California were identified as TriCap business addresses in the California Statement of Information filed on October 4, 2021 along with the Kearny, New Jersey address.

39.

Based on information and belief, TRIANGLE S.C. also conducts business at the Mississippi address listed on "The Triangle Group" website.

40.

Pursuant to the Staffing Agreement, TriCap agreed to pay MASIS $15.23 for each hour worked by each temporary employee assigned by MASIS to work for TriCap.

41.

In October 2019, TriCap stopped making payments to MASIS, despite MASIS continuing to supply temporary employees to TriCap.

42.

Throughout the working relationship between MASIS and TriCap, MASIS exchanged e-mails with representatives from TriCap, whose e-mail addresses were identified as "The Triangle Group's" email domain. For example, TriCap's Accounts Payable's e-mail address was "accountspayable@thetrianglegroup.com," and TriCap's employees' domains were "@thetrianglegroup.com".

43.

Throughout the contractual relationship, but specifically between October 2019 through February 2020 and after TriCap voluntarily cancelled its registration under Delaware law, individuals working in Savannah, Georgia and purportedly acting on behalf of TriCap, but also representing themselves as "The Triangle Group" would submit time sheets and approve time sheets for workers provided by Plaintiff confirming the hours temporary employees worked so that Plaintiff would

pay those employees for work performed ostensibly for the benefit of TriCap.

These Georgia-based employees of TriCap/The Triangle Group include but are not

necessarily limited to:

    (a)    Alex Lipski, Assistant Operations Manager, TriCap

    (b)    Dave Fillmore,

    (c)    David Tucker, Operations Supervisor

    (d)    Karen Lexie

    (e)    Ashley Page

Each of these Georgia-based employees had a "@thetrianglegroup.com" email

domain despite having titles and mailing addresses indicating they also worked for

TriCap.

44.

Throughout the contractual relationship, but specifically between October

2019 through February 2020 and after TriCap voluntarily cancelled its registration

under Delaware law, Plaintiff sent its outstanding TriCap invoices to "The Triangle

Group" for payment.  Specifically, the invoices would be sent to Frank Feliciano,

Director of East Coast Operations and Brian Roberts, Controller, who worked in

New Jersey and had a "@thetrianglegroup.com" email domain despite representing

that they had authority to conduct business for TriCap.

45.

Plaintiff sent TriCap's invoices to "The Triangle Group" for payment because TriCap directed Plaintiff to do so.

46.

In turn, "The Triangle Group" sent payments to Plaintiff for services rendered to TriCap.

47.

On its checks issued to MASIS, TriCap listed its address as 9 S. Hackensack Avenue, Building 43, Kearny, New Jersey, 07032.  This is a common address between TriCap, TRIANGLE GROUP and TRIANGLE S.C.

48.

"The Triangle Group" approved payment of specific invoices and approved payments on behalf of TriCap.

49.

As a specific example, on April 18, 2019, in regards to a then outstanding invoice payment, Matt Wyble with "The Triangle Group" advised: "I am with Tricap."

50.

When TriCap's payments were past due, Plaintiff negotiated with Brian Roberts with The Triangle Group to formulate a payment plan.

51.

When the parties discussed payment of the unpaid TriCap invoices, the discussions took place between a representative of Plaintiff and numerous TriCap employees with "@thetrianglegroup.com" domains.

52.

Later, after the invoices stopped being paid at all, Plaintiff's Collections Manager, Jim Marine, also had communications with George Corsi, Vice-President of Finance for the Triangle Group.  Mr. Corsi subsequently signed the California Statement of Information on behalf of TriCap holding himself out as TriCap's Vice-President of Finance.

53.

Moreover, Plaintiff's Chief Financial Officer, Alex Salas, sought to directly engage PARKER and BLANC regarding how to resolve the outstanding invoices.

54.

Due to TriCap's repeated failure to pay MASIS for services rendered, MASIS filed a complaint against TriCap seeking to recover $407,516.78 plus interest in *Masis Staffing Solutions, LLC v. TriCap International, LLC, Caryn Blanc, and Allan*

*Parker*, Civil Action File Number 2020CV337103, in the Superior Court of Fulton County, Georgia. A copy of the Complaint is attached as Exhibit B.

55.

Ultimately, a Default Judgment (the "Judgment") was ordered against TriCap for $418,612.86 by Honorable Judge Thomas A. Cox, Jr. on January 11, 2021. A copy of the Default Judgment is attached as Exhibit C.

56.

With interest, the amount now due under the Judgment totals $465,496.38 as of August 19, 2022, with interest accruing at a daily rate of $80.28.

57.

The Judgment remains unsatisfied.

58.

Since the entry of the Judgment against TriCap, MASIS has attempted to collect on the Judgment. It has become apparent that Defendants, BLANC, PARKER and TRIANGLE GROUP have taken actions to avoid paying TriCap's financial obligations, including the Judgment.  Although Defendants and TriCap conducted business as a unitary business entity throughout the term of the Staffing Agreement, Defendants now seek to hide behind purported corporate formalities and falsely claim that TriCap is defunct and judgment-proof. In fact, TRIANGLE GROUP and TRIANGLE S.C. appear to have taken over the Georgia business

operations that previously were being conducted under the auspices of TriCap.  In reality, these businesses are all the same business and are nothing less than alter egos of each other.

<u>59</u>.

TriCap's members, operations, and financial resources, among other things, were inextricably intertwined and controlled by Defendants under "The Triangle Group" nomenclature.

60.

Long after the business relationship ended and after the Judgment was entered by the Georgia Court, on December 8, 2021, Sandra Gomez with "The Triangle Group's" Finance Group sent an e-mail to a large group of TriCap employees regarding "closing November 2021." Every employee used a "@thetrianglegroup.com" domain.  Ms. Gomez was communicating with individuals who previously held themselves out as TriCap employees about closing the financial books of the Triangle Group for the month of November 2021.  Based on information and belief, the financial records of TriCap and the Triangle Group were the same long before November 2021 (and throughout the period of the Staffing Agreement) and through to the present.

61.

Yet another example of the central control of TriCap by The Triangle Group is that Defendants Allan Parker and Caryn Blanc are listed as The Triangle Group's "Managing Partners."

62.

These facts clearly indicate TRIANGLE GROUP, TRIANGLE S.C. and TriCap are alter egos of each other.

63.

When the Judgment was rendered against TriCap, the TriCap name ceased being used (at least in Georgia), but the same business operations exist solely as "The Triangle Group" whether now being run by TRIANGLE GROUP and/or TRIANGLE S.C.

64.

On or about June 24, 2021, the 54 Sonny Perdue Drive, Garden City, Ga 31408 business location had public signage identifying "The Triangle Group" as conducting business at this location.

65.

At that time, an employee on site, Mr. Stephen McMahon, confirmed that the company had previously conducted business at the 54 Sonny Perdue Drive location using the name "TriCap."  Mr. McMahon provided a business card which

identified Mr. McMahon as the "Facility Manager" with an email address of

smsmahon@thetrianglegroup.com.   The business card also identifies another

business entity as "Triangle SC, LLC."

66.

More recently, on August 17, 2022, Adam Lipski, who was the "Assistant

Operations Manager" for TriCap was found working at the 54 Sonny Perdue Drive

location.  Mr. Lipski provided a current business card which identified Mr. Lipski

as the "Operations Manager" with an email address of

alipski@thetrianglegroup.com.   The business card also identified another business

entity called "Triangle SC International."

67.

This ceasing and transferring of operations is an obvious attempt to avoid

payment of the Judgment and perhaps other financial liabilities.

68.

Indeed, it seems highly likely that whatever assets where once "owned" by

the defunct TriCap limited liability entity have likely been transferred to

TRIANGLE GROUP and/or TRIANGLE S.C. (or to some other, presently unknown

entity) to fraudulently avoid payment of the Judgment to Plaintiff.  Plaintiff will

require discovery and the compulsory power of the Court to determine if a further

amended pleading is required to assert a fraudulent conveyance theory.

**COUNT ONE:**

**To Declare TRIANGLE GROUP and/or TRIANGLE S.C. to be the Alter Ego of the Judgment Debtor, TriCap (Piercing the Corporate Veil)**

69.

By this reference, Plaintiff restates and incorporates the foregoing paragraphs 1 through 68 in their entirety.

70.

The members and managers of TriCap, including but not limited to BLANC and PARKER, and in collaboration with The Triangle Group, disregarded the separate legal personality of TriCap.

71.

There is such unity of interest and ownership between TriCap, its members, and The Triangle Group, that the separate personalities of TriCap and The Triangle Group no longer exist.

72.

TriCap's corporate form has been disregarded so as to make it a mere sham or a business conduit for "The Triangle Group," TRIANGLE GROUP and/or TRIANGLE S.C.

73.

The members and managers of TriCap, including but not limited to BLANC and PARKER, and in collaboration with "The Triangle Group," TRIANGLE

GROUP and/or TRIANGLE S.C. have commingled and confused funds, records, and control on an interchangeable or joint basis.

74.

The members and managers of TriCap, including but not limited to BLANC and PARKER, and in collaboration with "The Triangle Group," TRIANGLE GROUP and/or TRIANGLE S.C. have converted corporate property of TriCap.

75.

The members and managers of TriCap, including but not limited to BLANC and PARKER, and in collaboration with "The Triangle Group," TRIANGLE GROUP and/or TRIANGLE S.C. have confused public knowledge and understanding of corporate control of TriCap, TRIANGLE GROUP and/or TRIANGLE S.C.

76.

Exceptional circumstances are presented in that the members and managers of TriCap, including but not limited to BLANC and PARKER, and in collaboration with "The Triangle Group," TRIANGLE GROUP and/or TRIANGLE S.C. have overextended and abused the corporate form and the privilege to conduct business in the corporate form to defeat justice, perpetrate fraud, and to evade contractual or tort liability.

77.

To continue to recognize TriCap and The Triangle Group as distinct corporate entities would promote injustice or permit the perpetration of fraud.

78.

By the same token, to disregard the supposed separate corporate existence of TriCap, TRIANGLE GROUP and/or TRIANGLE S.C. would remedy injustice.

79.

MASIS is entitled to a declaration that Defendants are the alter ego of TriCap, and that the Judgment shall attach to and be valid against each Defendant in the same manner as it is valid against TriCap.

## COUNT TWO:

### For Damages against Managers Taking Part in the Commission of Tortious Acts of the Limited Liability Company

80.

By this reference, Plaintiff restates the foregoing paragraphs 1 through 79 in their entirety.

81.

Defendants Caryn BLANC and Allan PARKER are the "managers" of TRIANGLE GROUP and/or TRIANGLE S.C., and have historically treated TRIANGLE GROUP and/or TRIANGLE S.C. as a unitary business operation.

82.

As managers or members, Defendants Caryn BLANC and Allan PARKER collaborated and took active roles in commingling funds, defrauding, converting property, overextending and abusing the corporate privilege, and other tortious conduct related to TriCap and TRIANGLE GROUP and/or TRIANGLE S.C.

83.

As managers or members, Defendants Caryn BLANC and Allan PARKER are personally liable for such tortious conduct.

84.

MASIS is entitled to a judgment against Defendants Caryn BANC and Allan PARKER in an amount to be determined at trial.

**COUNT THREE**:

**For Equitable Relief to Assist a Creditor Under O.C.G.A. § 18-2-3**

<u>85</u>.

By this reference, Plaintiff restates the foregoing paragraphs 1 through 84 in their entirety.

86.

MASIS is a creditor of the Judgment Debtor, TriCap.

87.

TriCap has been voluntarily cancelled as a corporate entity and apparently is insolvent.

88.

Defendants have converted to their own use assets of TriCap in excess of the amount of MASIS's claim.

89.

MASIS has been damaged by the conversion of TriCap's assets by Defendants.

90.

MASIS has been unable to collect the debt owed it by TriCap.

91.

For this Court to refuse to provide equitable relief would jeopardize the collection of the debt owed by TriCap to MASIS.

92.

To the extent that MASIS lacks a legal remedy, it is entitled to the equitable assistance of this Court to reach assets in which TriCap has an equitable interest.

**COUNT FOUR:**

**Breach of Contract Against TRIANGLE GROUP and/or TRIANGLE S.C.**

93.

By this reference, Plaintiff restates the foregoing paragraphs 1 through 92 in their entirety.

94.

Plaintiff and TriCap entered into the Staffing Agreement, a valid contract, on May 2, 2017.

95.

On May 15, 2019, TriCap was voluntarily cancelled as a Delaware limited liability company and ceased to exist as a corporate entity authorized to conduct any business.

96.

After May 15, 2019 and through the end of February 2020, either TRIANGLE GROUP and/or TRIANGLE S.C. assumed, whether by a formal assignment or otherwise, the contractual rights, privileges and obligations of TriCap under the Staffing Agreement.

97.

After May 15, 2019 and through the end of February 2020, either TRIANGLE GROUP and/or TRIANGLE S.C. continued to request services from Plaintiff pursuant to the terms of the Staffing Agreement.

98.

Neither TriCap nor TRIANGLE GROUP nor TRIANGLE S.C. nor
PARKER nor BLANC nor anyone else operating under "The Triangle Group"
nomenclature informed Plaintiff that TriCap had voluntarily cancelled its corporate
existence.

99.

Plaintiff continued to provide services pursuant to the Staffing Agreement to
"The Triangle Group," TRIANGLE GROUP and/or TRIANGLE S.C. after May
15, 2019 and to send invoices to TriCap through "The Triangle Group" for services
provided after May 15, 2019 through the end of February 2020.

100.

After May 15, 2019 and through the end of February 2020, individuals
purporting to represent TriCap and operating under "The Triangle Group"
nomenclature, whether employees of TRIANGLE GROUP and/or TRIANGLE
S.C., continued to approve the hours worked for temporary employees and Plaintiff
paid those employees based on the received approvals.

101.

For the period after May 15, 2019 through the end of February 2020,
Plaintiff continued to prepare invoices for TriCap and submitted those invoices to
"The Triangle Group" for payment.

102.

The failure to pay the outstanding invoices constitutes a breach of the Staffing Agreement by whichever corporate entity, TRIANGLE GROUP and/or TRIANGLE S.C., assumed, whether by a formal assignment or otherwise, the contractual rights, privileges and obligations of TriCap under the Staffing Agreement.

103.

As a result of the breach of contract by whichever corporate entity, TRIANGLE GROUP and/or TRIANGLE S.C., assumed, whether by a formal assignment or otherwise, the contractual rights, privileges and obligations of TriCap under the Staffing Agreement, Plaintiff has been harmed in the amount of at least $465,496.38, or an amount to be proven at trial.

**COUNT FIVE:**

**Breach of Contract Against PARKER and BLANC.**

104.

By this reference, Plaintiff restates the foregoing paragraphs 1 through 103 in their entirety.

105.

Plaintiff and TriCap entered into the Staffing Agreement, a valid contract, on May 2, 2017.

106.

On May 15, 2019, TriCap was voluntarily cancelled as a Delaware limited liability company and ceased to exist as a corporate entity authorized to conduct any business.

107.

At the time TriCap voluntarily cancelled its corporate existence under Delaware law on May 15, 2019, PARKER and BLANC were the sole members of the limited liability company.

108.

After May 15, 2019 and through the end of February 2020, Defendants PARKER and BLANC, as the members of the defunct, canceled corporate entity, assumed, whether by a formal assignment or otherwise, the contractual rights, privileges and obligations of TriCap under the Staffing Agreement.

109.

After May 15, 2019 and through the end of February 2020, individuals working on behalf of PARKER and/or BLANC continued to request services from Plaintiff pursuant to the terms of the Staffing Agreement.

110.

Neither TriCap nor TRIANGLE GROUP nor TRIANGLE S.C. nor PARKER nor BLANC nor anyone else operating under "The Triangle Group"

nomenclature informed Plaintiff that TriCap had voluntarily cancelled its corporate existence.

111.

Plaintiff continued to provide services pursuant to the Staffing Agreement to "The Triangle Group," PARKER and/or BLANC after May 15, 2019 and to send invoices to TriCap through "The Triangle Group" for services provided after May 15, 2019 through the end of February 2020.

112.

After May 15, 2019 and through the end of February 2020, individuals working on behalf of PARKER and/or BLANC, purporting to represent TriCap and operating under "The Triangle Group" nomenclature continued to approve the hours worked for temporary employees and Plaintiff paid those employees based on the received approvals.

113.

For the period after May 15, 2019 through the end of February 2020, Plaintiff continued to prepare invoices for TriCap and submitted those invoices to "The Triangle Group" for payment.

114.

The failure to pay the outstanding invoices constitutes a breach of the Staffing Agreement by PARKER and/or BLANC who assumed, whether by a

formal assignment or otherwise, the contractual rights, privileges and obligations of TriCap under the Staffing Agreement after TriCap voluntarily cancelled its corporate existence.

115.

As a result of the breach of contract by PARKER and/or BLANC who assumed, whether by a formal assignment or otherwise, the contractual rights, privileges and obligations of TriCap under the Staffing Agreement, Plaintiff has been harmed in the amount of at least $465,496.38, or an amount to be proven at trial.

**COUNT SIX:**

**Unjust Enrichment and/or Quantum Meruit**

116.

By this reference, MASIS restates the foregoing paragraphs 1 through 115 in their entirety.

117.

Plaintiff expended valuable time and resources providing services pursuant to the Staffing Agreement after May 15, 2019 when TriCap voluntarily cancelled its corporate existence.

118.

Plaintiff reasonably expected to be fairly compensated for the services being provided pursuant to the Staffing Agreement.

119.

Plaintiff incurred costs and expenses in paying the temporary employees after individuals purporting to represent TriCap requested those services between May 15, 2019 and February 2020.

120.

In providing the services requested pursuant to the Staffing Agreement between May 15, 2019 and February 2020, Plaintiff was at all times acting at the direction of individuals purporting to represent TriCap.

121.

Since TriCap voluntarily cancelled its corporate existence on May 15, 2019, those individuals purporting to represent TriCap were, in fact, acting on behalf of either "The Triangle Group," TRIANGLE GROUP, TRIANGLE S.C., PARKER and/or BLANC when directing Plaintiff to provide services.

122.

Either "The Triangle Group" or TRIANGLE GROUP or TRIANGLE S.C. or PARKER and/or BLANC accepted and benefited from the services received from Plaintiff, which allowed Defendants to continue to operate their business from May 15, 2019 through the end of February 2020.

123.

Either "The Triangle Group" or TRIANGLE GROUP or TRIANGLE S.C. or PARKER and/or BLANC knew that Plaintiff expected to be compensated for providing services under the Staffing Agreement.

124.

It would be inequitable and unconscionable for Defendants to enjoy and retain the benefits of Plaintiff's services without compensating Plaintiff.

125.

Accordingly, Plaintiff is entitled to receive compensation equal to the fair value of the benefit conferred by Plaintiff to either "The Triangle Group" or TRIANGLE GROUP or TRIANGLE S.C. or PARKER and/or BLANC for the services Plaintiff provided pursuant to requests made by individuals purporting to represent TriCap, "The Triangle Group" or TRIANGLE GROUP or TRIANGLE S.C. or PARKER and/or BLANC for the period between May 15, 2019 through the end of February 2020.

## COUNT SEVEN:

### For Expenses of Litigation

126.

By this reference, MASIS restates the foregoing paragraphs 1 through 125 in their entirety.

127.

MASIS has incurred and will continue to incur substantial attorney's fees and expenses to prosecute the above-styled action.

128.

The above-named defendants' actions have demonstrated bad faith, have no legal justification, and have caused MASIS unnecessary delay and expense.

129.

MASIS's legal claims for piercing the corporate veil and/or alter ego liability sound in fraud, which, presents grounds for an award of attorneys' fees.

130.

MASIS is entitled to recover all costs of the prosecution of this matter, including reasonable attorney's fees, pursuant to O.C.G.A. § 13-6-11 and other applicable law.

**WHEREFORE**, MASIS demands judgment in the following particulars:

(a) On COUNT ONE: a finding that TriCap's corporate existence should be disregarded and that the Judgment shall therefore attach to and be valid as against each identified defendant, jointly and severally, in the same manner as it is valid against the TriCap;

(b) On COUNT TWO: a finding that, as managers or members, Defendants, Caryn Blanc and Allan Parker, are personally liable, and jointly and severally liable, for tortious conduct committed against MASIS;

(c) On COUNT THREE: a finding that MASIS is entitled to the equitable assistance of this Court to reach assets in which TriCap has an equitable interest;

(d) On COUNT FOUR: a finding that MASIS is entitled to breach of contract damages against TRIANGLE GROUP and/or TRIANGLE S.C.;

(e) On COUNT FIVE: a finding that MASIS is entitled to breach of contract damages against PARKER and/or BLANC;

(f) On COUNT SIX: a finding that MASIS is entitled to equitable relief under theories of unjust enrichment and/or quantum meruit and that MASIS is entitled to an award equal to the value of the benefit conferred by MASIS to each identified defendant, jointly and severally, in the same manner as it is valid against the TriCap and/or reimbursement of costs and expenses incurred by MASIS in providing the requested temporary employee services;

(g) On COUNT SEVEN: an award of all costs of the prosecution of this matter, joint and several, including reasonable attorneys' fees under O.C.G.A. § 13-6-11 and other applicable law;

(h) For an award of nominal damages, joint and several;

(i) For an award of special damages according to proof, jointly and severally;

(j) For TRIAL BY JURY on any issue so triable; and

(k) For such other and further relief as the Court may deem and equitable and just in the premises.

Respectfully submitted,

*/s/ John H. Goselin II*
JOHN H. GOSELIN II
Georgia Bar Number 302917
KINDU A. WALKER
Georgia Bar No. 732284

**LITCHFIELD CAVO LLP**
2100 Riveredge Parkway, Suite 1200
Atlanta, GA 30328
Phone: (770) 628-7111
Direct: (770) 628-7118
goselin@litchfieldcavo.com
walkerk@litchfieldcavo.com

*Counsel for Plaintiff,*
*MASIS Staffing Solutions, LLC*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 7.1 (D) of the Local Rules of the Northern District of Georgia, the undersigned hereby certifies that the foregoing was prepared in a font and point selection approved by this Court and authorized in Local Rule 5.1.

This 19th day of August 2022.


*/s/ John H. Goselin II*
John H. Goselin II

EXHIBIT A

 

# ABOUT TRIANGLE GROUP

**Specializing in technology, warehousing, and transportation, The Triangle Group is a proven partner to a diverse range of manufacturers and their retail partners including:**

- Apparel
- Beverage
- Building Materials
- Solar and Green Technology
- Consumer Electronics
- Consumer Goods
- Food / Grocery Products
- Furniture
- Health & Beauty Care
- Accessories (Jewelry, Hats, Belts, Etc.)
- Office Supplies
- Packaging

The Triangle Group's ("TG") experience working with over 50 retailers has given us a successful edge over the competition by understanding the retailer and manufacturer mindset, and proactively providing cost saving solutions designed to achieve better efficiency and save bottom-line dollars for our partners.  TG has worked hard to improve our service offerings, information technology platforms, and personnel to offer one of the best-in-class offerings in our niche markets - the east and west coasts.

We now offer a seamless end to end supply chain solution that is second to none.  From freight forwarding and customs clearance to bonded facilities, warehousing and fulfillment, and transportation to the end users, TG has the assets to provide exceptional supply chain solutions.

## Company Background

For over 40 years The Triangle Group has provided our customers with customized supply chain solutions. As our customers developed a more global reach through the 90's, the natural progression for The Triangle Group was to go international. With growing consumer demand for additional time sensitive transportation and distribution services reaching across our borders, we made the strategic decision to expand our transportation services to include international air freight, ocean transportation, and customs brokerage services.

## Corporate Vision

The Triangle Group's mission is to always put our customers' needs first. Our mission clearly states this goal:

*"To continue to be a proven partner to retail and manufacturers, delivering best-in-class technology, warehousing, and transportation services."*

## Go Green



The Triangle Group is helping to Green the Supply Chain by:

- Joining the Smartway certification Program
- Forming a "Green Committee" whose focus is to continue to improve our Green Programs
- Upgrading our facilities with energy efficient lighting
- Implementing our No Truck Idling Policy
- Ongoing Facility Energy Audit Process
- Recycling
- Reuse of Packing Materials
- Reducing Paper Use

## Summary

The Triangle Group provides you with real world benefits by having our facilities close to major ports and metropolitan commerce hubs:

- 1,000,000 square feet of combined warehouse space
- Bonded CFS facilities on both east and west coasts
- Experts at reducing supply chain costs
- Established network of global agents/partnerships
- Flexible and fully-Integrated IT Infrastructure
- Import/Export multiple country consolidation
- Overseas and domestic loading optimization

When deciding upon a logistics services provider, you are choosing the people, the systems, the technology, the culture, and the efficiencies of the organization. We are dedicated to improving your supply chain performance and "helping you take charge of making a difference."

## Locations



- **New Jersey**
  9 South Hackensack Blvd, Kearny, NJ 07302
  2801 US Route 130 S, North Brunswick, NJ 08902
- **Los Angeles**
  2988 E. Ana Street, Rancho Dominguez, CA 90221
  3015 E. Ana Street, Rancho Dominguez, CA 90221
  19067 S Reyes Ave, Rancho Dominguez, CA. 90221
- **Georgia**
  54 Sonny Perdue Drive, Garden City, GA 31408
  155 Brampton Road, Garden City, GA 31408
- **Florida**
  6725 NW 36TH Street BLDG #6 suite-600, Miami, FL 33166
- **Mississippi**
  1018 Mendell Davis Drive, Byram, MS 39272

ABOUT US

- **Company Background**

- **Corporate Vision**

- **Go Green**

- **Summary**

- **Locations**

Benefits of Working With Us

- 1,000,000 square feet of combined warehouse space

- Bonded CFS facilities on both east and west coasts
- Experts at reducing supply chain costs
- Established network of global agents/partnerships
- Flexible and fully-Integrated IT Infrastructure
- Import/Export multiple country consolidation
- Overseas and domestic loading optimization

## Our Company Today

We are still a privately-held company, and since our inception, we have been providing 'flexible and customized' solutions for all aspects of our clients' supply chain. We service small and large clients by listening to their unique business needs and customizing our physical assets along with our technology applications to suit whatever part of the logistics process our clients require.



©2001 - 2022 **The Triangle Group**. All Rights Reserved.
9 South Hackensack Avenue, Kearny NJ, 07032

**Website designed and developed
by Network Design and Communications**

# EXHIBIT B

Fulton County Superior Court
***EFILED***QW
Date: 6/11/2020 4:44 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY

## STATE OF GEORGIA

| | |
|---|---|
| MASIS STAFFING SOLUTIONS, LLC,    ) | |
|    ) | |
|       Plaintiff,    ) | |
|    ) | |
| v.    ) | CIVIL ACTION FILE |
|    ) | NO.: |
| TRICAP INTERNATIONAL, LLC,    ) | |
| CARYN BLANC, and ALLAN PARKER,    ) | |
|    ) | |
|       Defendants.    ) | |
|    ) | |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff, **MASIS STAFFING SOLUTIONS, LLC,** ("MASIS"), by and through its undersigned attorney, and files this Complaint for Damages ("Complaint") against Defendants **TRICAP INTERNATIONAL, LLC, ("TCI"), CARYN BLANC** ("BLANC"), and **ALLAN PARKER** ("PARKER") or ("Defendants"), and respectfully shows the Court as follows:

## PARTIES

1.

Plaintiff is a limited liability company organized and existing under the laws of the State of Massachusetts operating as a staffing agency providing businesses with temporary employees. Plaintiff's principal place of business is located at 416 Belmont Street, Suite 201 Worcester, MA, 01604.

2.

TriCap International, LLC is a limited liability company organized and existing under laws of the State of New Jersey with a principal office address located at 9 South Hackensack Avenue, Kearny, NJ, 07032 and a principal local business address located at 155 Brampton Road,

Savannah, GA, 31408.  Upon information and belief, TCI does business under the name The Triangle Group, LLC.

3.

TCI conducts business in the State of Georgia and may be served with process through its registered agent, Northwest Registered Agent Service, Inc., located at 300 Colonial Center Parkway, Suite 199N, Roswell, GA, 30076.

4.

Upon information and belief, TCI is a privately held company that is owned by Defendants CARYN BLANC and ALLAN PARKER.

5.

Upon information and belief, Defendant CARYN BLANC is a resident of Arizona and may be served with process at her home address of 27735 N. 103rd Pl, Scottsdale, AZ 85262

6.

Upon information and belief, Defendant ALLAN PARKER is a resident of Florida and may be served with process at his home address of 2000 S. Ocean Blvd. Apartment 505N, Palm Beach, FL 33480.

**JURISDICTION AND VENUE**

7.

This Court has jurisdiction over this matter pursuant to O.C.G.A. § 15-7-4 as the acts or omissions complained of occurred in the State of Georgia and TCI is registered to conduct business, and does conduct business, within the State.

8.

This Court has jurisdiction over BLANC and PARKER pursuant to O.C.G.A. § 9-10-91

because both transact business in this State and committed acts that caused injury within the State.

9.

Venue is proper in this Court as to all Defendants and pursuant to O.C.G.A. § 14-2-510 as TCI maintains a registered office in this county.

## FACTS

10.

On or about May 2, 2017, MASIS and TCI entered into a Staffing Agreement ("Agreement") wherein MASIS was to provide TCI temporary employees. The Agreement is attached to this Complaint as Exhibit A.

11.

Pursuant to the Agreement, MASIS recruited, screened, interviewed and assigned temporary employees to TCI.

12.

MASIS also paid those temporary employees.

13.

In exchange for MASIS's services, TCI agreed to pay MASIS $15.23 per hour worked by the temporary employees assigned by MASIS, with additional provisions for overtime pay when warranted.

14.

Under the agreement, MASIS billed TCI weekly for its services and TCI agreed payment was due to MASIS within 30 days of its receipt of each invoice.

15.

Beginning in or about October 2019, TCI stopped making payments to MASIS although

MASIS continued to supply temporary employees to TCI.

16.

On March 12, 2020, MASIS informed TCI that TCI was in arrears in the amount of approximately $360,000.00.

17.

In fact, as of March 12, 2020, TCI owed MASIS $360,112.70 payable on past due invoices.

18.

Moreover, on March 12, 2020, MASIS had additional outstanding invoices to TCI in an amount totaling $10,584.97 but those invoices had not yet been outstanding 30 days.

19.

As of the date of this Complaint, however, all outstanding invoices issued by MASIS to TCI are due and payable under the terms of the Agreement.

20.

Subsequent to MASIS's March 12, 2020 communication with TCI, the two companies reached an agreement through which TCI agreed to pay MASIS $10,000.00 per week ("Payment Plan"). The first of these payments was to be made Friday, March 20, 2020.

21.

This March 2020 Payment Plan was the formalization of a "handshake deal" reached between the parties in or about January 2020.

22.

Under the Payment Plan the $10,000.00 payments were to be received via wire transfer no later than 5:00 p.m. on Friday of each week.

23.

When MASIS entered into the Payment Plan it informed TCI that one missed payment could lead to litigation.

24.

Though TCI made initial payments under the Payment Plan, those payments soon stopped.

25.

On May 12, 2020, TCI informed MASIS it had received funding through the Paycheck Protection Plan ("PPP") and would "get back on track with the payments."

26.

On May 19, 2020, however, TCI informed MASIS it was unable to make agreed on payments. MASIS does not know what happened to the PPP money TCI indicated it had received and is concerned TCI's owners, Defendants BLANC and PARKER, may have used these funds for themselves or other businesses they own.

27.

In addition to the amounts owed MASIS on unpaid invoices, Section 4.1 of the Agreement states that "[a] 1.5% finance fee will be applied to past due balances at the end of each calendar month."

28.

To date that 1.5% finance fee on open invoices totals $25,846.47.

29.

Similarly, the 1.5% fee applied to payments made after they were due totals $36,673.68.

30.

The total 1.5% fee on all outstanding and late payments therefore totals $62,520.15.

31.

On information and belief Defendants BLANC and PARKER are the sole owners of TCI.

32.

On information and belief Defendants BLANC and PARKER, among other potential issues, exercised pervasive control over TCI and have overextended their privilege in the use of the corporate entity, so as to warrant piercing the corporate veil.

33.

As of the date of this Complaint, TCI owes MASIS $407,516.78 in unpaid fees under the Agreement plus the finance fee indicated in Section 4.1 of the Agreement.

## COUNT I – BREACH OF CONTRACT
### All Defendants

34.

MASIS incorporates its allegations in Paragraphs 1 through 34 above as if fully restated herein.

35.

The Agreement constitutes a valid contract under all applicable laws.

36.

MASIS provided consideration for the Agreement. Such consideration included the recruiting, screening, interviewing and assigning temporary employees for TCI.

37.

At all relevant times MASIS was ready, willing and able to perform its part of the Agreement. In fact, MASIS did perform its part of the Agreement.

38.

TCI's failure to make payments as required by the Agreement constitutes a breach of the

Agreement.

39.

As a result of TCI's breach MASIS has been harmed in the amount of at least $350,000.00.

40.

Defendant TCI is liable to MASIS directly for all amounts MASIS was damaged by TCI's breach.

41.

Defendants BLANC and PARKER are jointly and severally liable to MASIS for TCI's breach as TCI's sole owners.

**PLAINTIFF'S PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Honorable Court grant the following relief:

(a) That summons be issued and service be had upon Defendants;

(b) That this Court issue Judgment against Defendants in the amount of at least $407,516.78 together with costs and disbursements and any other relief the Court deems just.

(c) That Plaintiff be awarded the court cost and expenses of litigating this action; and

(d) That Plaintiff received such other relief as this Honorable Court deems just and proper.

Respectfully submitted this 10th day of June, 2020.

*/s/ Kindu A. Walker*
KINDU A. WALKER
Georgia Bar No.: 732284
TIFFANY B. HARLOW
Georgia Bar No.: 141386

*Counsel for Plaintiff*
*Masis Staffing Solutions, LLC*

**LITCHFIELD CAVO LLP**
1300 Parkwood Circle SE, Suite 170
Atlanta, GA 30339-2143
Phone: (770) 628-7111
Direct: (770) 628-7113
walkerk@litchfieldcavo.com
harlow@litchfieldcavo.com

**EXHIBIT A**



MASIS STAFFING SOLUTIONS

# Staffing Agreement

## TriCap International

May 02, 2017 | *Prepared by:* Susan Boffoli

| *Prepared for:* Freddie Ruth

## Responsibilities

This STAFFING AGREEMENT (the "Agreement") is made and entered into this **05/02/2017** (the "Effective Date"), by and between **Masis Staffing Solutions, LLC**, a Massachusetts limited liability company with a principal business address at 416 Belmont Street, Suite 201, Worcester, MA 01604 ("STAFFING FIRM"), and **TriCap International**, with a principal business address at **155 Brampton Rd. Savannah Georgia 31408** ("CLIENT").

WHEREAS, STAFFING FIRM is engaged in the business of providing and supervising qualified and competent temporary employees to companies; and

WHEREAS, CLIENT desires to avail itself of STAFFING FIRM's services with regard to identifying and placing employees of STAFFING FIRM with CLIENT on a temporary or interim basis for the performance of specific projects and/or services, and STAFFING FIRM desires to provide such services to CLIENT, pursuant to the terms of this Agreement.

**1. STAFFING FIRM's Responsibilities.** STAFFING FIRM will:

a) Recruit, screen, interview, and assign its employees ("Assigned Employees") to perform the type of work described on Exhibit A attached hereto under CLIENT's supervision at the locations specified on Exhibit A;

b) Pay Assigned Employees' wages and provide them with the benefits that STAFFING FIRM offers to them;

c) Pay, withhold, and transmit payroll taxes; provide unemployment insurance and workers' compensation benefits; and handle unemployment and workers' compensation claims involving Assigned Employees.

**2. CLIENT's Responsibilities.** CLIENT will:

a) Properly supervise Assigned Employees performing its work and be responsible for its business operations, products, services, and intellectual property;

b) Properly supervise, control, and safeguard its premises, processes and systems, and not permit Assigned Employees to operate any vehicle or mobile equipment (other than fork lifts as may be mutually agreed upon by the STAFFING FIRM and CLIENT in writing), or entrust them with unattended premises, cash, checks, keys, credit cards, merchandise, confidential or trade secret information, negotiable instruments, or other valuables without STAFFING FIRM's express prior written approval or as strictly required by the job description provided to STAFFING FIRM; and

c) Not change Assigned Employees' job duties without proper training. CLIENT will notify STAFFING FIRM in writing prior to reassigning an Assigned Employee to a new position.

**3. Safe Work Environment.**

3.1 STAFFING FIRM and CLIENT will identify certain conditions and hazards and determine how best to ensure protection of the Assigned Employees during evaluations and loss prevention assessments at CLIENT's premises and/or CLIENT's job sites, as applicable. CLIENT shall treat Assigned Employees like any other workers in terms of training and safety and health protection, in accordance with Federal, State and Local regulations and laws, and shall provide safety equipment and specific training tailored to CLIENT's workplace procedures for CLIENT's particular hazards. CLIENT shall report all occupational injuries and illnesses suffered by Assigned Employees to the STAFFING FIRM contact within 24 hours from CLIENT's awareness thereof. In the event frequent or major injuries occur, STAFFING FIRM and CLIENT will conduct an assessment of CLIENT's job site and give

recommendations on the safety of employees. CLIENT shall comply with STAFFING FIRM's recommendations to ensure the utmost safety standards are met. CLIENT acknowledges and agrees CLIENT's noncompliance could lead to a rate increase or the termination of services provided by STAFFING FIRM.

3.2 STAFFING FIRM is not responsible for the record keeping of OSHA 300 logs for CLIENT facility.

3.3 STAFFING FIRM and STAFFING FIRM's insurance carrier reserve the right to conduct an accident investigation at CLIENT's facility in the event of an accident or injury involving Assigned Employees. STAFFING FIRM will provide a minimum notice of 24 hours to CLIENT in the event that an accident investigation is required.

3.4 STAFFING FIRM may request from CLIENT the option to place an Assigned Employee that qualifies for restricted duty, due to an injury that occurred at CLIENT's facility, on assignment at CLIENT facility, providing CLIENT can make the accommodations for the restriction.

# Bill Rates and Payment Terms

4. **Bill Rates and Payment Terms.**

4.1 CLIENT shall pay STAFFING FIRM for its performance at the rates set forth on Exhibit A and will also pay any additional costs or fees set forth in this Agreement. STAFFING FIRM will invoice CLIENT for services provided under this Agreement on a weekly basis. CLIENT acknowledges that payment is due STAFFING FIRM within **thirty (30)** days via ACH payment. Invoices will be supported by the pertinent time sheets or other mutually agreed upon system for documenting time worked by the Assigned Employees. CLIENT's signature or other agreed upon method of approval of the work time submitted for Assigned Employees certifies that the documented hours are correct and authorizes STAFFING FIRM to bill CLIENT for those hours. If a portion of any invoice is disputed, CLIENT will pay the undisputed portion. A 1.5% finance fee will be applied to past due balances at the end of each calendar month.

4.2 In addition to the bill rates specified in Exhibit A of this Agreement, CLIENT will pay STAFFING FIRM the amount of all new or increased labor costs (e.g. minimum wage adjustments and other governmentally mandated cost increases) associated with CLIENT's Assigned Employees that STAFFING FIRM is legally required to pay—such as wages, benefits, payroll taxes, social program contributions, or charges linked to benefit levels—until the parties agree on new bill rates.

4.3 CLIENT shall adhere to all laws requiring premium pay for overtime worked. STAFFING FIRM will charge CLIENT 1.5 times the bill rate for overtime hours worked.

4.4 CLIENT acknowledges that if CLIENT limits an Assigned Employee's work day to fewer than 3 hours, CLIENT will be billed for 3 hours.

4.5 STAFFING FIRM shall comply with all provisions of the Affordable Care Act (ACA) applicable to contract workers, including the employer-shared responsibility of provisions relating to the offer of "minimum value plan" to "full-time" employees (as those terms are defined in Internal Revenue Code §4980H and related regulations) and the applicable employer information reporting provisions under Internal Revenue Code §6055 and 6056 and related regulations. No Additional Cost to CLIENT.

4.6 Earned Sick Time. Staffing firm will comply with existing and upcoming state laws for earned sick time. Staffing firm will track accrual of sick time when applicable according to State Law. Staffing firm will apply a discounted rate to hours submitted for pay in the "Sick Time" category. This section is not applicable unless earned sick time requirements are enacted by the State of Georgia or required by federal law.

5. **Temp-to-Hire.** CLIENT acknowledges STAFFING FIRM's standard temp-to-hire period is 520 hours/13 weeks with no conversion fee. If CLIENT uses the services of any Assigned Employee as its direct employee, as an independent contractor, or through any person or firm other than STAFFING FIRM during or within six (6) months after any assignment of the Assigned Employee to CLIENT from STAFFING FIRM, CLIENT must notify STAFFING FIRM and continue the Assigned Employee's assignment from STAFFING FIRM until such time he or she has worked the requisite 520 hours. STAFFING FIRM will bill CLIENT the following conversion fee for Assigned Employee's who are hired prior to 520 hours.

| **Hours Worked** | **% of Annual Salary** |
| --- | --- |
| 0-200 Hours | 15% |
| 201-360 Hours | 10% |
| 361-520 Hours | 5% |

6. **CLIENT-Recruited Employees.** Assigned Employees are also CLIENT-recruited employees when, by prior arrangement with STAFFING FIRM, CLIENT recruits or otherwise identifies personnel whose services it needs and refers them to STAFFING FIRM, there to be employed and assigned back to CLIENT. The terms of this Agreement will be modified with respect to CLIENT-recruited employees in the following ways: **(N/A)**

7. **Confidential Information.** Both parties may receive information that is proprietary to or confidential to the other party or its affiliated companies and their clients. Both parties agree to hold such information in strict confidence and not to disclose such information to third parties or to use such information for any purpose whatsoever other than performing under this Agreement or as required by law. No knowledge, possession, or use of CLIENT's confidential information will be imputed to STAFFING FIRM as a result of Assigned Employees' access to such information.

## Indemnification

8. **Indemnification and Limitation of Liability.**

8.1 To the extent permitted by law, STAFFING FIRM will defend, indemnify, and hold CLIENT and its parent, subsidiaries, directors, officers, agents, representatives, and employees harmless from and against all claims, demands, lawsuits, judgments, losses, liabilities and expenses (including reasonable attorneys' fees) to the extent relating to or resulting from (a) STAFFING FIRM's breach of this Agreement; (b) its failure to discharge its duties and responsibilities set forth in Section 1 hereof; (c) the negligence, gross negligence, or willful misconduct of STAFFING FIRM or STAFFING FIRM's officers, employees, or authorized agents in the discharge of those duties and responsibilities; or (d) the filing of a workers' compensation claim by any Assigned Employee

8.2 To the extent permitted by law, CLIENT will defend, indemnify, and hold STAFFING FIRM and its parent, subsidiaries, directors, officers, agents, representatives, and employees harmless from and against all claims, demands, lawsuits, judgments, losses, liabilities and expenses (including reasonable attorneys' fees) to the extent relating to or resulting from (a) CLIENT's breach of this Agreement; (b) its failure to discharge its duties and responsibilities set forth in Section 2 hereof; or (c) the negligence, gross negligence, or willful misconduct of CLIENT or CLIENT's officers, employees, or authorized agents in the discharge of those duties and responsibilities.

8.3 Neither party shall be liable for or be required to indemnify the other party for any negligence, gross negligence

or willful misconduct, incidental, consequential, exemplary, special, punitive, or lost profit damages that arise in connection with this Agreement, regardless of the form of action (whether in contract, tort, negligence, strict liability, or otherwise) and regardless of how characterized, even if such party has been advised of the possibility of such damages.

8.4 As a condition precedent to indemnification, the party seeking indemnification will inform the other party as soon as possible after it receives notice of any claim, loss, liability, or demand for which it seeks indemnification from the other party; and the party seeking indemnification will cooperate in the investigation and defense of any such matter. The parties agree to cooperate fully and to provide assistance to the other party in the investigation and resolution of any complaints, claims, actions, or proceedings that may be brought by or that may involve Assigned Employees.

## Insurance

9. **Insurance**.

9.1 STAFFING FIRM maintains the following insurance coverage in the amounts so indicated:

- Workers' Compensation and Employer's Liability Insurance: $1,000,000 per accident
- Commercial General Liability Insurance: $1,000,000 per occurrence, $3,000,000 aggregate
- Professional Liability Insurance: $1,000,000 per occurrence, $3,000,000 aggregate
- Business Automobile Liability Insurance: combines single limit $1,000,000 per accident for No owned & Hired Automobiles
- Third Party Crime Policy: $5,000,000 aggregate
- Umbrella Insurance: $5,000,000 per occurrence

Should any of the above-mentioned policies be cancelled prior to the expiration date thereof, the insurer will endeavor to provide STAFFING FIRM and CLIENT with 30 days advance written notice thereof (10 days advance written notice with respect to any policy cancelled due to nonpayment).

9.2 Upon CLIENT's request, STAFFING FIRM will provide CLIENT with certificates of workers' compensation and general liability insurance coverage. Upon STAFFING FIRM's request, CLIENT shall provide STAFFING FIRM with certificates of insurance coverage.

## Terms and Conditions

10. **Term and Termination**. The term of this Agreement is 12 months from the Effective Date, which term shall automatically renew on an annual basis for each successive 12-month period unless earlier terminated. The Agreement may be terminated by either party upon thirty (30) days written notice to the other party. Termination of this Agreement for any reason whatsoever will not relieve CLIENT of its obligation to immediately pay STAFFING FIRM any outstanding amounts owed as of the date of termination, including such amounts that have accrued but have not yet been invoiced.

11. **Force Majeure**. Neither party will be responsible for failure or delay in performance of this Agreement if the

failure or delay is due to labor disputes, strikes, fire, riot, war, terrorism, acts of God, or any other causes beyond the control of the nonperforming party.

12. **Entire Agreement**. The parties hereto agree that this Agreement, including any exhibits, addendums, schedules or appendices attached hereto, represents the complete agreement of the parties with respect to the transactions contemplated hereby and supersedes all prior agreements and understandings whether verbal or written. Any modification or amendment to this Agreement must be memorialized in a written instrument signed by the parties.

13. **Binding Effect; Assignment**. This Agreement shall be binding upon and inure to the benefit of the parties and their respective representatives, successors and assigns, except that CLIENT shall not transfer or assign this Agreement without STAFFING FIRM's written consent.

14. **Governing Law**. This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts. The parties agree that any litigation pertaining to this Agreement or the services provided hereunder shall be decided in the federal or state courts in the Commonwealth of Massachusetts.

15. **Counterparts**. This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and any of the parties hereto may execute this Agreement by signing any such counterpart.

16. **Unenforceability**. If any provision of this Agreement is declared void or unenforceable by any judicial or administrative authority, the validity of any other provisions and of the entire Agreement shall not be affected thereby. Further, the within Agreement shall be reformed and construed, as if such invalid or illegal or unenforceable provision, or part of a provision, had never been contained herein, and such provisions or part reformed so that it would be valid, legal and enforceable to the maximum extent possible.

17. **Waiver of Terms.** No waiver of any right, obligation or default shall be effective unless in writing, signed by the party against whom the waiver is sought to be enforced. The failure of a party to enforce the provisions of this Agreement will not be a waiver of any provision or the right of such party thereafter to enforce each and every provision of this Agreement.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed by their duly authorized agents as of the Effective Date.

Exhibit A

**Exhibit A**

Pricing

| Category | Hourly Bill Rate |
|---|---|
| Light Industrial | $15.23 |

**Other Provisions:**

At STAFFING FIRM's expense, STAFFING FIRM will perform the following types of background/qualification checks for all employees which it selects for assignment to CLIENT and will not assign unqualified personnel to CLIENT:

**Background Screen**

- 7 year county Criminal Background Screen
- National Background Screen
- National Social Security Trace
- Multi State Sex Offender

**Drug Testing**

- 5 Panel In House Drug Test

**E-Verify**

## Exhibit B - Meal Break Policy

United States Department of Labor Wage and Hour Division (WHD) requires a minimum length of Meal Period for Adult Employees. In the event of an audit by WHD, CLIENT may be required to pay Workers Owed Wages (WOW) if found in violation of the Meal Break policy. All Assigned Employee's from STAFFING FIRM working a shift of 6 (six) hours or more at CLIENT facility will be entitled to one of the following to comply with State Law:

- Punch in and out for an unpaid 30 minute lunch break

Or,

- Be deducted 30 minutes from their time card automatically in order to take an unpaid meal break. During this time they will be released from all work duties.

Or,

- Receive a paid 30 minute meal break daily that won't be recorded on the time card.


*Sue Boffoli*
Sue Boffoli                    Apr 28, 2017

*Frank Feliciano*
Frank Feliciano                    May 03, 2017

# EXHIBIT C

Fulton County Superior Court
***EFILED***QW
Date: 1/11/2021 10:58 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
### STATE OF GEORGIA

MASIS STAFFING SOLUTIONS, LLC,   )
   )
        Plaintiff,   )
   )
v.   )  CIVIL ACTION FILE
   )  NO.: 2020CV337103
TRICAP INTERNATIONAL, LLC,   )
   )
        Defendants.   )
   )

## FINAL ORDER AND JUDGMENT

On June 11, 2020, Plaintiff Masis Staffing Solutions, LLC ("Masis") filed a Complaint

for Damages against Defendants Tricap International, LLC ("Tricap"), Caryn Blanc, and Allan

Parker.[1] The Complaint alleges that Masis and TCI entered into a Staffing Agreement

("Agreement") wherein Masis recruited, screened, interviewed and provided temporary

employees to Tricap. Plaintiff Masis alleges that Defendant Tricap is indebted to it for unpaid

fees and interest pursuant to the Agreement. On August 19, 2020, Plaintiff filed an Affidavit of

Service for Defendant Tricap International, LLC.

A review of the Court docket shows there was no Answer filed on behalf of Defendant

Tricap or any pleading to extend time for Defendant Tricap to Answer the Complaint and that the

time for pleading or otherwise defending this matter has expired.

On October 19, 2020, the Court scheduled an initial Notice of Final Hearing and

subsequently rescheduled the Hearing for December 9, 2020 to obtain additional information

concerning Plaintiff's claim. At both hearings, Plaintiff's counsel was present; however,

Defendant Tricap failed to appear.

---

[1] Defendants Caryn Blanc and Allan Parker were dismissed without prejudice on July 29, 2020.

1

Upon consideration of Plaintiff's complaint, evidence, and a subsequent filing of its counsel's Affidavit in Support of Legal Fees and for good cause having been shown:

IT IS HEREBY ORDERED that Defendant Tricap is indebted to Plaintiff Masis in the amount of:

- $325,697.62 for unpaid invoices;

- $49,778.56 for interest on unpaid invoices;

- $36,673.68 for interest on closed invoices; and

- $6,463.00 in reasonable attorneys' fees for a total outstanding amount of **$418,612.86**.

IT IS FURTHER HEREBY ORDERED that Defendant Tricap is required to pay this outstanding amount to Plaintiff Masis within thirty (30) days of receipt of this Order.

So Ordered this  11th  day of January, 2021

JUDGE THOMAS A. COX, JR.
SUPERIOR COURT OF FULTON COUNTY